52 CCPA

Application of William H. HAINES, Jr., and Edwin Paul Carter.

Patent Appeal No. 7257.

United States Court of Customs and Patent Appeals.

Dec. 10, 1964.

---

C. Willard Hayes, Washington, D. C. (Raymond Fink, Denver, Colo., Cushman, Darby & Cushman, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

SMITH, Judge.

Appellants' claimed method for making power transmission belts is not identically disclosed or described in the art relied upon to support the rejection. The issue before us thus arises under 35 U.S.C. § 103 and requires a determination of whether the differences between the claimed method and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person of ordinary skill in the art of manufacturing power transmission belts.

Appellants' specification [1] describes the method which is claimed in appealed claims 13, 16 and 20, of which claim 13 is representative. Claim 13 reads as follows:

"13. A method for making power transmission belts comprising the steps of: supporting an untreated fibrous material within a vacuum chamber having a cavity defining the desired contour of the belt, evacuating the cavity and introducing a degassed liquid elastomer therethrough under influence of vacuum so as to completely impregnate the fibrous material, and followed by curing then fabricating the resultant product to form a plurality of flexible, unitary belt members."

Appellants' specification states:

"Essentially, the invention may be seen to consist of the substantially complete permeation of the tensile section by means of introducing a specially prepared liquid elastomer material under vacuum and pressure, if desired, wherein exceedingly close control is utilized in the removal of entrapped fluids from the materials and mold prior to casting to obtain the desired adherence and uniting of the reinforcing section within the body. * * *"

The specification also states:

" * * * it has been found that the elastomer material will attain

1. Application serial No. 739,829, filed June 4, 1958.

:a very high degree of impregnation -with many types of *wire*, or textile fibers and yarns, such as, dacron, ·cotton, nylon, rayon, fortisan and ·others, and is *not dependent upon* *the properties of the tensile section itself to obtain the desired result."* [Emphasis added.]

The rejection is based on three references:

| | | |
|---|---|---|
| Tognola | 2,477,273 | July 26, 1949 |
| Fenner (British) | 430,035 | June 12, 1935 |
| Continental (British) | 744,907 | Feb. 15, 1956 |

———◆———

We agree with the board that:

"The basic reference, the patent to Continental, discloses a method of making transmission belts utilizing the same types of molds, materials and techniques utilized by appellants, with the exception that the plastic material is not introduced under the influence of a vacuum. * * * "

We also agree with the position stated by appellants in their brief here that: " * * * the Continental patent discloses nothing but the pouring of viscous elastomer material into the open upper end of an annular mold. Apparently, the patentee assumed that the material would, under the influence of gravity, displace the air in the mold and give reasonably satisfactory mold filling, with some measure of penetration of the 'reinforcing insertion.' There is no suggestion of performing this operation under the influence of vacuum. The only basis upon which the use of vacuum could be supplied to the Continental method, in rejecting appellants' claims would be that the use of vacuum for the purpose and as claimed 'would have been obvious at the time the invention was made to a person having ordinary skill in the art * * *'. * * * "

However, we think Fenner made it obvious to one of ordinary skill in this art to utilize a vacuum to enhance the impregnation of textile materials in a woven belt by a latex coating. Certainly, Fenner discloses the desirability of removing all air from the interstices of the threads which form the fabric that reinforces the belting and also the removal of air from the woven belt. In both instances a vacuum is utilized when coating with latex to provide complete impregnation.

Appellants contend that the disclosures of Continental and Fenner do not make it obvious to a person of ordinary skill in this art to degassify the elastomeric materials prior to their introduction into the molding chamber. While this may be true, we think a person of ordinary skill in this art would, in view of the Tognola reference, consider this step to be an obvious one. Tognola utilizes a polymerized plastic which is described as having a viscosity at 75° to 80°F. "of about that of heavy lubricating oil." He degasses the plastic prior to insertion in the mold and introduces the plastic into the mold under the influence of vacuum.

Appellants assert that Tognola relates to a non-analogous art, stating in their brief:

"It was Tognola's purpose to fill the container, or casing, including the spaces *between* the strands of the coil, but there is no suggestion in the patent that the strands themselves were impregnated."

While we appreciate this asserted difference, we find it impossible to reconcile appellants' present position that Tognola contains no suggestion that the strands of the coil were "impregnated," because Tognola's copper wires "obviously cannot be impregnated," with the portion of appellants' specification previously referred to and in which it is asserted "that the

elastomer material will attain a very high degree of impregnation with many types of wire * * * and is not dependent upon the properties of the tensile section itself to obtain the desired result."

Appellants asserted distinction over Tognola to the effect that "molding is not involved—merely filling containers. The containers and their contents are never subsequently separated," is not persuasive. "Molding" is involved in Continental and the containers and their contents are there "subsequently separated."

The authorities cited by appellants in support of their present position involve quite different fact situations. We do not find them appropriate in supporting appellants' argument that since the Tognola teachings are found in a specifically different art they would not be obvious to a person of ordinary skill in the art of making power transmission belts. It is appellants' own teaching that broadens the field of applicable art. Both appellants and Tognola seek the filling of an evacuated chamber containing wire to be "impregnated" with a viscous polymerized plastic. It seems to us that this fact alone makes the Tognola teachings most pertinent to a person of ordinary skill in this art.

Appealed claim 16 is specific to the method as applied to a positive drive (tooth type) power transmission belt. Appealed claim 20 is specific to the use of a liquid polyurethane elastomer material. We do not consider these or other noted verbal differences in the claims to be significant as defining an invention which can be said as a whole to have been unobvious to a person of ordinary skill in this art at the time appellants made their disclosed invention.

For the foregoing reasons, we agree with the board that:

"In considering the Continental patent, we cannot overlook the fact that the patentee desires penetration of the fibers. He states that this is attained. * * * Since he does not utilize vacuum, he does not attain the degree of penetration attained by appellants. However, one skilled in the art would have the knowledge obtained from the Fenner and Tognola patents that a more complete penetration could be obtained by the use of vacuum. Under these circumstances, we are not persuaded that appellants' method represents an unobvious variation over the prior art which we can recognize as providing a patentable improvement."

The decision is affirmed.

Affirmed.